# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Petitioner,

    v.                             No.  15-mc-00046 WJ

TRICORE REFERENCE LABORATORIES,

        Respondent.

## MEMORANDUM OPINION AND ORDER
## DENYING PETITIONER'S APPLICATION FOR ORDER TO SHOW CAUSE WHY AN ADMINISTRATIVE SUPBOENA SHOULD NOT BE ENFORCED

THIS MATTER comes before the Court upon an Application by Petitioner Equal Employment Opportunity Commission ("EEOC" or "Commission") for an Order to Show Cause Why an Administrative Subpoena Should not be Enforced, filed November 30, 2015 **(Doc. 1).** The EEOC moves to enforce a subpoena requesting Respondent Tricore Reference Laboratories ("TriCore") to produce information needed as part of the EEOC's investigation of a charge of unlawful employment practices.[1] The EEOC asks the Court to issue an Order to Show Cause and enforce the subpoena. A hearing was held on the matter, and after considering the parties written and oral arguments, the Court finds that Petitioner's request is not well-taken and, therefore, is DENIED.

## BACKGROUND

---

[1] The EEOC brings this action for enforcement of a subpoena issued pursuant to Section 710 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-9 and Section 107 of the Americans with Disabilities Act of 1990 (ADA), 42 U.S. C. § 12117(a). This Court has jurisdiction over the matter under Section 706(f) (3) of Title VII, 42 U.S.C. § 2000e-5(f) (3), and by Section 11 of the National Labor Relations Act, 29 U.S.C. § 161, as amended, incorporated in Section 710 of Title VII, 42 U.S.C. § 2000e-9 and in Section 107 of the ADA, 42 U.S. C. § 12117(a).

I.      **Underlying Charge**

Kellie Guadiana was employed as a phlebotomist by TriCore in Albuquerque.  On June 26, 2012, she filed a charge of discrimination with the New Mexico Department of Workforce Solutions alleging that TriCore discriminated against her on the basis of disability and sex (pregnancy).  She claimed that TriCore refused to accommodate her disabilities, refused to reassign her to a vacant position for which she was qualified, and then terminated her on May 5, 2012.

During its investigation, the EEOC learned that Ms. Guadiana's physicians certified to TriCore that Ms. Guadiana could continue to work but would require accommodations for her rheumatoid arthritis and her pregnancy.  These restrictions, due to Ms. Guadiana's rheumatoid arthritis, were that she could not stand or walk for long periods of time, could not be exposed to infectious diseases, needed to sit for 75% of her shift, could not lift in excess of 20 pounds, and could not "enter contact or droplet precaution rooms" because of the possible risk to her pregnancy.  TriCore determined that the restrictions and the recommended accommodations by Ms. Guadiana's doctors meant that Ms. Guadiana could not perform the essential functions of her job, since the position of phlebotomist required constant standing and walking and potential continuous exposure to infectious diseases when she drew blood, which was an essential part of her job.  TriCore also determined that Ms. Guadiana was similarly unable to perform the essential functions of other jobs she identified at TriCore, although the company did attempt to accommodate Ms. Guadiana.   For example, TriCore changed her night shift to a day shift when Ms. Guadiana provided a noted from her doctor that her rheumatoid arthritis pain was worse at night.  *See* Doc. 3-8.

TriCore admits that it did not assist Ms. Guadiana in finding a suitable reassignment position.  Based on its position is that she is not a "qualified individual" with a disability, TriCore determined that it was under no obligation to either accommodate her or find a reasonable reassignment.  *See Woodman v. Runyon et al*, 132 F.3d 1330 (10th Cir. 1997) (under the ADA, "qualified" means able to perform the essential functions of the job, with or without reasonable accommodation).[2]  Instead, TriCore advised Ms. Guadiana to apply and compete for vacant positions within the company, where the most qualified candidate would be selected. The EEOC claims that TriCore's conduct "suggests" (Doc. 2 at 3) a company-wide policy and/or practice of refusing to provide reasonable accommodation to qualified employees with disabilities and instead forcing qualified employees with disabilities to compete with other employees for vacant positions they needed as reasonable accommodations.

Respondent ("TriCore") has provided some information responsive to the subpoena but has refused to provide other information concerning *other* employees who are not part of Ms. Guadiana's claims, which TriCore claims is irrelevant and immaterial to the individual charge of discrimination, and is an excuse for a "fishing expedition" by the Commission.

## II.    Chronological Facts Concerning the Subpoena[3]

TriCore initially cooperated in providing the documentation requested by the EEOC, such as a complete list of job and job descriptions that Ms. Guadiana expressed interest in after TriCore discovered her work restrictions.  *See* Doc. 6 at 4, n.2.  This changed when the  EEOC decided to broaden the scope of the requests.  In November of 2014, the EEOC sent TriCore an

---

[2]  Under 42 U.S.C. § 12111(9) of the ADA, the term "reasonable accommodation" may include assignment to a vacant position.  See Smith v. Midland Brake, Inc., 180 F.3d 1154, 1167 (10th Cir. 1999).  However, the ADA does not require an employer to create a new job for the purpose of reassigning an employee" and thus "reassignment is limited to existing jobs within the company."  Id. at 1174.

[3]  Supporting documentation is contained in Doc. 3, which is the Declaration of Derick Newton, Area Director.

expansion letter and request for information, advising that the Commission was expanding the scope of its investigation to cover all TriCore employees who needed an accommodation because of a disability and/or because of pregnancy.  The Commission claimed that the class allegations of failure to accommodate persons with disabilities were related to Ms. Guadiana's underlying charge or were based on evidence uncovered during the EEOC's investigation of the underlying charge.  Specifically, the Commission informed TriCore that the class allegations of failure to accommodate persons with disabilities (including pregnancy-related disabilities) were "like and related to the underlying charge, or are based on evidence uncovered during the EEOC's investigation of the underlying charge." Doc. 3-5. The Commission requested the following categories of information:

(1) any and all jobs that Guadiana applied for at TriCore after TriCore determined she was no longer qualified for her current position, along with the corresponding job descriptions;

(2) a complete list of TriCore employees who requested an accommodation due to a disability from November 1, 2010 until present; and

(3) a complete list of TriCore employees who were pregnant while employed, and what accommodations, if any, TriCore made for them, from November 1, 2010 until present.

Doc. 3-4.  TriCore asked the Commission for an extension of time to respond as well as a copy of the Compliance Manual on which the Commission relied for deciding to expand the scope of investigation.  Then, on February 6, 2015, TriCore informed the Commission by letter of the basis for its position that Ms. Guadiana was not a "qualified individual with a disability" under the ADA and provided the Commission with the reasons why the other positions identified by Ms. Guadiana also required essential functions that were inconsistent with Ms. Guadiana's

work restrictions.  Doc. 3-8.    TriCore objected to the Commission's requests for additional

discovery in the November 2014 letter and did not produce additional documentation.[4]

In response to TriCore's February 6, 2015 letter, the Commission issued another Request

for Information on February 23, 2015, but this time it narrowed the temporal scope of the inquiry

to a 3-year time span.  Doc. 3-9.  TriCore asked for a stay of the matter pending the Supreme

Court's decision in *Young v. UPS, Inc.,* 135 S.Ct. 1338, 1354 (2015), contending the Supreme

Court's decision in *Young* would have an impact on this case.[5]  The Commission granted a small

extension until March 16, 2015, but on March 16th, TriCore restated that it would not produce

the information requested and against asked that the matter be delayed until *Young* was decided.

After *Young* was decided, the Commission again sent out a request for the same documents that

it requested in the February 23, 2015 letter.  Doc. 3-13. TriCore did not respond to that request.

---

[4]   The Commission describes TriCore's letter as stating that it "had no intention of producing the information"
(Doc. 2 at 4), although what TriCore actually stated was that it "respectfully objects to production of the information
sought in the second and third requests."  Doc. 308.   The Court has little problem understanding TriCore's
reluctance—even inability—to furnish information on which employees became pregnant while they were employed
at TriCore.   The third category of information requested in EEOC's November 2014 letter does not appear to be
limited only to pregnant women who asked for accommodations, in which case there would be some documentation
of those requests in company files.   On the other hand, the Commission's request for TriCore to identify women
who became pregnant during their employment and did not seek accommodation, was not well thought out because
identification of this group would have been difficult.   It would have been decidedly risky, especially from a legal
point of view, for a TriCore representative to be conducting regular inquiries into the gravid health status of its
female employees.

[5]  *Young* basically makes it easier for a pregnant plaintiff to make out a prima facie Title VII case.  Prior to *Young,*
an employer did not have the duty to provide accommodations other than those given to similarly situated
employees with similar limitations cause by on-the-job injuries.  *Young* rejected the plaintiff's argument that
pregnant workers who are similar in the ability to work must receive the same treatment even if still other
nonpregnant workers do *not* receive accommodations" (such as nonpregnant workers who were injured *off* the job,
or employees with seniority or different job classifications).  135 S.Ct. at 1349.  In the end, *Young* imposed a
standard somewhere in-between, by expanding the scope of Title VII's pregnancy discrimination coverage in the
prima facie case, which could be met by a showing that the employer did not accommodate a pregnant employee
despite accommodating others who were similarly situated in terms of ability or inability to work.  However, the
employer then got the chance in the shifting burden analysis under *McDonnell Douglas* to show that the refusal to
accommodate was based on legitimate, nondiscriminatory reasons—such as reasons why other nonpregnant workers
who were similarly limited in ability to work were not accommodated.

  While the EEOC suggests that TriCore's insistence on a stay was not justified, it is worth noting that the
Commission's own regulations at the time stated that  an employer could not deny light duty to a pregnant employee
based on a policy that limits light duty to employees with "*on*-the-job injuries."  135 S.Ct. at 1352 (emphasis added).

On April 28, 2015, the Commission issued the subpoena requiring TriCore to produce documents, preferably in electronic format, containing "biographical employment, and contact information, of all employees who requested an accommodation due to disability from January 1, 2012 through present" and "all employees who were pregnant while employed and if any accommodation was requested, from January 1, 2012 through present." Doc. 3-14.

TriCore petitioned to revoke the subpoena on May 7, 2015, asserting that the Commission sought information and documents irrelevant to the charge under investigation because the subpoena did not reference any information suggesting that an additional charge was at issue, much less a charge with implications of company-wide discrimination. TriCore also considered the subpoena as unduly burdensome because it required TriCore to manually review employee files and conduct interviews of managers in approximately 20 satellite centers in New Mexico and Texas.   On September 18, 2015, the Commission denied TriCore's petition to revoke the subpoena and further determined that the information sought was relevant to the investigation of Ms. Guadiana's charge and was not unduly burdensome.  TriCore was given 20 days from October 15, 2015, the date of the Commission's denial of the petition in which to comply with the subpoena, but TriCore has not done so.

## DISCUSSION

The only issue before the Court here has nothing to do with the merits of the case, but is limited to whether the subpoena issued by the EEOC should be enforced against TriCore.  The Commission's position is that its requests are part of a lawful investigation of Ms. Guadiana's charge of discrimination.

**I.      Legal Standard**

Title VII grants the EEOC broad investigatory powers, providing that the Commission "shall. . . have access to. . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a).   EEOC subpoena-enforcement proceedings are summary in nature and involve only limited judicial review.  *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1277 (10th Cir. 2002) (not allowing "an employer to turn a summary subpoena-enforcement proceeding into a mini-trial by allowing it to interpose defenses that are more properly addressed at trial"); *EEOC v. Randstad,* 685 F.3d 433, 442 (4th Cir. 2012).  To successfully petition a court to enforce an administrative subpoena, the Commission needs only to show that:

> (1) the subpoena is within the agency's authority;
> (2) the demand is not too indefinite; and
> (3) the information sought is relevant to the investigation.[6]

Once this showing has been made, a court will enforce the subpoena unless the respondent can prove that the subpoena is unduly burdensome.  *EEOC v. Citicorp Diners Club*, 985 F.2d 1036, 1040 (10th Cir. 1993). Here, the parties contest only the relevance of the requested material.   TriCore also objects to the temporal scope of the requested information, which is not an issue if the Court does not enforce the subpoena.

## II.    Analysis

It is undisputed that Ms. Guadiana's charge of discrimination alleges discrimination only as to herself: that TriCore terminated her employment because of her pregnancy and disability. *See* Doc. 3-1 (Charge of Discrimination).   Nevertheless, the EEOC contends that it needs the requested information from a broadened search including other employees who were pregnant in

---

[6] *See Univ of Pa. v. EEOC*, 493 U.S. 182, 191 (1990); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984); *EEOC v. Dillon Companies, Inc.*, 310 F.3d 1271, 1274 (10th Cir. 2002).

order to help the Commission determine whether Ms. Guadiana's charge is supportable.   In seeking to expand the scope of its requested discovery and requiring TriCore to respond, the Commission relies on the broad definition given to the concept of "relevance" in the context of an EEOC investigation, as well as the deference a court must give the agency in its interpretation of what is relevant.

A.     Relevance

The Commission points out that the concept of "relevance" for purposes of an EEOC investigation is broader than relevancy during litigation.  *See EEOC v. Shell Oil Co*., 466 U.S. 54, 68-69 (1984) ("[C]ourts have generously construed the term 'relevant' . . . .").  However, as TriCore notes, an EEOC-issued subpoena is not without limits because the EEOC's investigative authority must be tied to the charge under investigation. The Commission may access "any evidence of any person being investigated" so long as that evidence "relates to unlawful employment practices . . .  and is **relevant to the charge under investigation**." 42 U.S.C. § 2000e–8(a) (emphasis added).

The Court fails to see how information on other pregnant employees who have sought accommodation at TriCore is relevant to Ms. Guadiana's own claims of discrimination.  Whether discrimination occurred in Ms. Guadiana's case depends on whether she could show that employees who were *not* pregnant were treated more favorably.[7] This is because in a lawsuit alleging discrimination, Ms. Guadiana will have the burden of showing that she belonged to a protected class (e.g., pregnant / disabled workers) and that TriCore accommodated others "similar in their ability or inability to work" but were not in her protected class.  *See Young v.*

---

[7]   In a lawsuit alleging discrimination, Ms. Guadiana will have the burden of showing that she belonged to a protected class (e.g., pregnant workers) and that TriCore accommodated others "similar in their ability or inability to work" but were not in her protected class.  *See Young v. UPS, Inc*., 135 S.Ct. at 1353; see n.5, supra.

*UPS, Inc*., 135 S.Ct. at 1353; *see* n.5, supra.  Thus, the broad scope of information the EEOC seeks with regard to other employees who *were* pregnant is not relevant to whether there was discriminatory intent directed at Ms. Guadiana based on her pregnancy or disability.

The EEOC's real intent in requesting this discovery is, in fact, difficult to pin down.  At the hearing, the EEOC claimed it was requesting the additional discovery in order to determine whether discrimination had occurred in Ms. Guadiana's case, but it also claimed at the hearing it was requesting this information in order to see whether there was a basis to broaden Ms. Guadiana's charge to include company-wide discrimination.[8]  In other words, the Commission's additional basis for broadening the scope of discovery is not the relevance of the requested discovery to Ms. Guadiana's claim, but the hope that the wider-reaching  information would provide a basis for changing Ms. Guadiana's individual claim into one alleging company-wide discrimination against pregnant or disabled employees.  This take on the relevancy requirement is not supported by the relevant case law.

The United States Supreme Court notes that courts "have generously construed the term "relevant" but also categorizes relevant material as material that "might cast light on the allegations against the employer." *EEOC v. Shell Oil Co*., 466 U.S. at 68-69.  Also, in *EEOC v. Burlington N. Santa Fe R.R*. (*Burlington*), the Tenth Circuit defined relevance in the context of an EEOC subpoena:

> While the Supreme Court has described the relevance requirement in § 2000e–8(a) as "not especially constraining," the Court also has explained **that courts should not construe the relevance requirement so broadly as to "render[ ] that requirement a nullity**. . . " Thus, "when a court is asked to enforce a

---

[8]   Claims of disparate treatment involve an employer's alleged treatment of some people less favorably than others because of their race, color, religion, sex or national origin. *International Broth. of Teamsters v. U.S*., 431 U.S. 324, 335 (1977).  These claims can be distinguished from disparate impact claims which involve employment practices that are "facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id*.

Commission subpoena, its responsibility is to 'satisfy itself that the charge is valid and that **the material requested is "relevant" to the charge.** . . .'"

669 F.3d 1156-1157 (10th Cir. 2012) (emphasis added) (citing *Univ. of Penn. v. EEOC*, 493 U.S. 182, 191 (1990) (quoting *EEOC v. Shell Oil Co*., 466 U.S. 54, 68 (1984)).  *Burlington* involved individual charges of discrimination filed by two men who applied for the same type of job in the same state, and who alleged discrimination based on a perceived disability.  In that case, the Tenth Circuit affirmed the district court's denial of the EEOC's request for the employer's electronic database identifying all individuals not hired for positions requiring medical screening because they were deemed not medically fit for the job, because such information "would not provide comparative statistics or a useful context for [the individual] charge of discrimination."

The EEOC attempts to distinguish *Burlington* because in that case, the EEOC was demanding nationwide information, where in this case, the EEOC is not asking for nationwide data. The Court disagrees with the Commission that *Burlington* is distinguishable enough to reject its applicability, because the basis for the Tenth Circuit's ruling was not the fact that the request was for nationwide information, but because the EEOC did not present "an explanation as to why, or on what basis, it was expanding its investigation."  669 F.3d at 1156.  The court acknowledged that "wide deference" is given to administrative agency investigations and to the scope of issued subpoenas, but noted that that deference "does not transcend the gap between the pattern and practice investigation and the private claims that have been shown here."  *Id.* At 1158.  The *Burlington* court did not deny the EEOC's request for nationwide information simply because it was a nationwide request, but because the EEOC gave no reason for the court to allow it.  *Id.* ("nothing prevents the EEOC from investigating the charges filed by Mr. Graves and Mr. Palizzi, and then—if it ascertains some violation warranting a broader investigation—expanding its search").  Just as the *Burlington* court found that "nationwide recordkeeping data" was not

"relevant to" charges of individual disability discrimination filed by two men who applied for the same type of job in the same state, the Court here finds that the identification about *other* pregnant and/or disabled TriCore employees has little use in the investigation of Ms. Guadiana's individual discrimination claim.[9]

Defendant also refers to *EEOC v. Royal Caribbean Cruises, Ltd.,* an Eleventh Circuit case, which the Court finds helpful in that it sheds additional light on the relevancy requirement. 771 F.3d 757, 761 (11th Cir. 2014). Plaintiff in that case filed a charge of discrimination with the EEOC after he was terminated from his employment on the cruise line when he was diagnosed with HIV, even though he had been declared fit for duty by his physician. The EEOC issued an administrative subpoena to the cruise line, requesting, *inter alia,* a listing of all employees who were discharged or whose contracts were not renewed due to a medical reason as well as information regarding those employees' employment applications and hiring and firing decisions. When the cruise line objected to the relevancy of the underlying charge, the EEOC filed a motion to enforce the subpoena. The Eleventh Circuit affirmed the district court's denial of that motion, finding that the information sought was not relevant to the complainant's charge:

> The relevance that is necessary to support a subpoena for investigation of an individual charge is relevance to the contested issues that must be decided to resolve that charge, not relevance to issues that **may be contested when and if future charges are brought by others**.

771 F.3d at 761 (emphasis added). The court did not reject the substance of the EEOC's request for statistical and comparative data. In fact, the court recognized that such information "in some cases may be relevant in determining whether unlawful discrimination occurred." *Id.* The

---

[9]  TriCore raises another consideration with regard to the usefulness of the requested information in the context of an ADA claim. As TriCore notes, Ms. Guadiana's restrictions stemming from her rheumatoid arthritis and pregnancy cannot be parsed into discrete categories. That is, even if there were other pregnant employees who were purportedly denied unpaid leave because of their pregnancy, they would not be similarly situated to Ms. Guadiana, whose restrictions related to walking and standing were because of her rheumatoid arthritis, but whose other restrictions were due to her pregnancy (the potential contact with blood borne pathogens). There would be no real comparative statistics to offer with other pregnant employees.

critical inquiry was (as it is here) whether the EEOC made "some showing that the requested information 'bears on the subject matter of the[ ] individual complaint[ ].'"  *Id.*  The court found that in that case, the EEOC had not done so.

The Commission balks at TriCore's reliance on *Royal Caribbean* because it is not a Tenth Circuit case.  Nevertheless, the Court finds the case helpful for three reasons.  First, the court's analysis and findings in *Royal Caribbean* are not inconsistent with the Supreme Court's reasoning in *Shell Oil* or with Tenth Circuit precedent in *Burlington*.  Second, the *Royal Caribbean* case is instructive because the basis for the EEOC's purpose in that case mirrors what appears to be the EEOC's purpose here.  The Commission seeks to obtain information that has no relevance to the individual charge, hoping to cast a wider net in the future.  The Commission rests on the position that information about other pregnant and/or disabled TriCore employees is germane to Ms. Guadiana's charge of discrimination, but as the Court previously noted, this explanation does not comport with the legal standards for discrimination.  Third, the EEOC has not relied solely on Tenth Circuit law in its briefing, and has offered its own share of law from other circuits to show how broadly courts have interpreted the relevancy requirement.  However, none of those cases dispense with relevancy as a requirement.  *See, e.g., EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 854 (9th Cir. 2009) (subpoena "need not request only evidence that is specifically relevant to proving discrimination; the requested information need only be "**relevant and material to the investigation**) (emphasis in original*); EEOC v. Randstad*, 685 F.3d 433, 448 (4th Cir. 2012) (Commission may access "virtually any material that might **cast light on the allegations against the employer**"); *E.E.O.C. v. Schwan's Home Servs.*, 644 F.3d 742, 747 (8th Cir. 2011) (relevancy requirement is "not especially constraining" and includes any evidence that "**might cast light on the allegations**") (emphasis added).  The Commission also contends that it

is lawfully permitted to conduct administrative "fishing expeditions"—although the case law on which it relies still requires a relevancy showing.  *See EEOC v. Dillon Cos.*, 310 F.3d at 1274 (noting that administrative "fishing expeditions" are often permitted, and that such subpoenas "may be enforced for investigative purposes **unless they are "plainly incompetent or irrelevant** to any lawful purpose") (emphasis added).

At the hearing, the Court stated that this issue was a "close call."  Part of what convinces the Court that the subpoena should not be enforced is a consideration of what the outcome would be if the Court granted the agency's application.  In response to the Court's inquiry as to whether the EEOC customarily sought information on other employees when investigating individual charges of discrimination, counsel for the EEOC conceded that it was now being sought for all cases, including investigations on individual charges of investigation.   Under this practice, it would be the rule rather than the exception for the Commission to obtain broad categories of what may be considered sensitive information on other employees, whether or not this information casts any light on the allegations in the underlying charge. This position does not appear to be justified under any reading of the relevant case law because it moots out the need for any showing of relevancy.

B.    Agency Deference

The EEOC contends that its discovery requests are accorded deference and that it does not need to present a "specific reason for disclosure" of the requested information.  *Univ. of Pa. v. EEOC,* 493 U.S. 182, 194 (1990).  However, this deference is not boundless and does not dispense with the relevancy requirement.  *Id.,* 493 U.S. at 193 ("the adoption of a requirement that the EEOC demonstrate a specific reason for disclosure, **beyond a showing of relevance**, would place a substantial litigation-producing obstacle in the EEOC's way . . .") (emphasis

added).  Courts generally will defer to the agency's appraisal of what is relevant "so long as it is not obviously wrong." *EEOC v. Randstad*, 685 F.3d 433, 448 (4th Cir. 2012) (internal citations omitted); *Burlington,* 669 F.3d at 1156 (finding that the agency's request did not "transcend the gap between the pattern and practice investigation and the private claims" even though "wide deference" is given to the "scope of [administrative subpoenas]. . . ."); *Dillon,* 310 F.3d at 1277 ("because the EEOC's subpoena seeks information that might shed light on [the underlying] charges and that is not **plainly irrelevant**, the subpoena must be enforced") (emphasis added).

In this case, even allowing for this deference to be given to the EEOC's interpretation of relevance, the Court finds that the EEOC's discovery requests concerning other employees at TriCore are directed toward potential or possibly future claims of company-wide allegations of discrimination, and have no bearing on the question of whether TriCore discriminated against Ms. Guadiana.  The EEOC's interpretation is not consistent with relevant case law on the issue, and therefore the EEOC's Application for an Order to enforce the subpoena will not be granted.

**THEREFORE,**

**IT IS ORDERED** that Petitioner's Application for an Order to Show Cause Why an Administrative Subpoena Should not be Enforced (**Doc. 1**) is hereby DENIED for reasons described in this Memorandum Opinion and Order.

A separate Rule 58 Judgment will be entered separately.

_____
UNITED STATES DISTRICT JUDGE